## TOBIAS *against* ROGERS.

The right of one surety to contribution from his co-surety, in the absence of an express agreement between them, arises from payment by him of a demand against the principal, which they were equally under legal obligation to pay.

Where one surety is discharged from his obligation to answer for the demand against the principal, he is not liable to his co-surety for contribution.[1]

A discharge granted to a person in 1843, under the bankrupt act of 1841, exonerates him from liability on a bond executed by him as a co-surety in 1837, conditioned that the plaintiff in a replevin suit, would pay such amount as might be recovered against him therein, although the replevin suit was pending and undetermined when the discharge was granted.

Accordingly, where, in 1837, the plaintiff and defendant, as sureties, executed with a party to a replevin suit a joint and several bond, conditioned that the latter would pay all sums which might be recovered against him therein; and in 1843 the defendant was discharged as a bankrupt, under the act of congress passed in 1841; and in 1847 judgment was recovered in the replevin suit against the principal in the bond, the amount of which the plaintiff was compelled to pay; *Held*, in an action by the plaintiff against the defendant for contribution, that his discharge in bankruptcy was a bar to the plaintiff's demand.

---

[1] *Clarke* v. *Porter*, 25 Penn. St. 141.

ON the 14th of September, 1837, persons named Mahoney and Trull brought an action of replevin, in the court of common pleas for the city and county of New-York. against the sheriff thereof and others; on that occasion, Mahoney and Trull, as principals, and Tobias and Rogers, the parties to this action, as their sureties, executed and delivered to the coroner of the city and county of New-York, a joint and several bond, in the penalty of $1283, conditioned, that Mahoney and Trull should prosecute the replevin suit to effect, and that, if the defendants therein should recover judgment against them, they would return the property replevied, if a return thereof should be adjudged, and that Mahoney and Trull would pay to the defendants in that suit all such sums as might be recovered against them therein by such defendants, for any cause whatever. On the 2d of September, 1842, Rogers, one of the sureties in the bond, being a resident of the southern district of New-York, presented a petition to the district court of the United States, for such district, praying that he be declared a bankrupt, and be discharged from his debts, pursuant to the provisions of the act of congress to establish a uniform system of bankruptcy throughout the United States, passed August 19th, 1841; and on the 26th of May, 1843, a decree was made by that court, discharging him " of and from all his debts provable under the said act, and owing by him at the time of the presentation of his petition to be declared a bankrupt." On the 27th of September, 1847, the defendants in the replevin suit, recovered therein judgment against Mahoney and Trull, to the amount of $1378 98. Mahoney and Trull omitting to pay this amount, the coroner, in December, 1847, assigned and transferred, pursuant to the statute, the bond, to the defendants in the replevin suit, who, in January, 1848, brought suit thereon against Tobias, one of the sureties, wherein they recovered against him, in March, 1849, the amount of the judgment in the replevin suit, with interest. In January, 1850. Tobias

paid this judgment against him, amounting, with interest and costs, to $1710.24.

In February, 1850, Tobias commenced this action against Rogers, in the supreme court. The complaint stated the above mentioned facts, with the exception of the application by Rogers for the benefit of the bankrupt act and his discharge under it, and alleged that thereby Rogers, as one of the sureties in the replevin bond, became liable to contribute and pay to the plaintiff one-half of the amount which he had been compelled to pay thereon, and prayed judgment for this sum. Rogers in his answer set up the proceedings in bankruptcy and his discharge, a copy of which was set out, as a defence. The plaintiff demurred to the answer, stating, among other grounds of demurrer, that his demand sought to be recovered in this action was not provable under the bankrupt act, and therefore not barred by the discharge. The supreme court, at special term, ordered judgment for the defendant on the demurrer, with leave to the plaintiff to amend. This judgment was affirmed at a general term of the court in the 1st district. The plaintiff appealed to this court.

*A. S. Garr*, for the appellant.

I. The claim that the plaintiff makes in this action was not a debt, contract or engagement of the defendant, provable under the proceedings in bankruptcy. When those proceedings were had, the plaintiff was not a creditor of, or surety for, or person having an uncertain or contingent demand against the defendant: 1. He was not a creditor; the debt did not begin to exist until the plaintiff had paid money on their joint bond, which payment he did not make, and was not even liable to make, until long after the defendant's discharge (*Holbrook* v. *Foss*, 27 *Maine* (14 *Shepley*) *Rep.*, 441; *Ellis* v. *Ham*, 28 *ib.* (15 *Shepley*), 385; *Cake* v. *Lewis*, 8 *Barr*, 493).; 2. He was not surety for the

defendant, nor did any contract or engagement of the defendant to him exist. As between the defendant and the plaintiff, it was not a case of principal and surety. They were not sureties for each other, though they were co-sureties for Mahoney and Trull, their principals. The 5th section of the bankrupt act is in substance the same, so far as regards sureties, as the 52d section of the English bankrupt law (6 *Geo. IV.*, *ch.* 16), which enacts, " that any person, who, at the issuing of the commission, shall be surety or liable for any debt of the bankrupt," may prove after having paid such debt. And the English courts have held that this section does not apply to co-sureties. (*Clements* v. *Langley*, 5 *B. & Ald.*, 372 ; *S. C.* 2 *Nev. & Mann.* 269, 274 ; *Browne* v. *Lee*, 6 *B. & Cres.*, 689 ; *Ex parte Porter*, 4 *Deacon & Chitty*, 474 ; *Wallis* v. *Swinburne*, 1 *Welsby, Hurlstone & Gor.*, 203 ; *Theobald on Pr. and Surety*, 275 ; *Pitman on Pr. and Surety*, 154 ; *Leigh's Nisi Prius*, 330 ; *Burge on Sureties*, 429, 431.) The liability of co-sureties to one another does not exist as a matter of contract between themselves, but arises out of an equity that exists between them as co-sureties for another. As soon as one of them pays more than his share, he acquires a right against the other to contribution ; but not until then. (1 *Story's Eq.*, 493 ; *Pitman on Pr. and Surety*, 147 ; *Parsons on Contracts*, 36, citing, *Davies* v. *Humphries*, 6 *M. & W.*, 153 ; *Ld. Eldon in Ex parte Gifford*, 6 *Ves.*, 808 ; *Norton* v. *Coons*, 3 *Denio*, 132.) 3. He was not a person " having an uncertain or contingent demand" against the defendant. No demand then existed ; but a mere possibility, incapable of valuation and therefore not provable, that at some future time he might have a contingent demand. For (1), there was a contingency whether a judgment in the replevin suit would ever be obtained against Mahoney and Trull, the principals. (2) If so, there would then be a contingency whether Mahoney and Trull would not themselves pay the sum recovered against them, and whether their sureties, Rogers

and Tobias, would ever be called upon to pay; and in the latter event a third contingency, whether either, and which, of them would pay more than his share, and thereby acquire a right against the other to contribution. (*Burge on Sureties*, 431; *Woodard* v. *Herbert*, 11 *Shepley*, 24 *Maine Rep.*, 358; *Comfort* v. *Eisenbeis*, 1 *Jones*, 11 *Penn. St.* 13; *Goss* v. *Gibson*, 8 *Humph.*, *Tenn. Rep.*, 197; *Dole* v. *Warren*, 2 *Redington*, 32 *Maine Rep.*, 94; 2 *Kent's Comm.*, 7th *ed.*, 473, *note* 2.)

*J. K. Porter*, for respondent.

I. The demand of the plaintiff was barred by the defendant's discharge under the bankrupt act: 1. The discharge operated upon " all debts, contracts and other engagments" of the bankrupt, which were provable under the act (5 *U. S. Statutes at large*, 444, § 4); 2. The 5th section of the act provides, among other things, that all " holders of policies of insurance, sureties, endorsers, bail, or other persons having uncertain or contingent demands against such bankrupt, shall be permitted to come in and prove such debts or claims under this act, and shall have a right, when their debts and claims become absolute, to have the same allowed them" (5 *U. S. Statutes at large*, 445, § 5); 3. The words " uncertain" and " contingent" should be so construed as to give effect to each; the one having reference to amount, and the other to liability; 4. Where the liability was fixed, but the amount uncertain, as in the case of annuities, provision was made for valuation and payment *in presenti*; but where the liability was contingent, and it depended on future events whether the obligation would ever ripen into a right of action, the claim could be proved, but not allowed until it became absolute; 5. When the plaintiff and defendant signed the bond, each became surety for the other in respect to half the amount; and as between themselves, they entered into an implied contract for rata-

ble payment and mutual indemnity (*Bradley* v. *Burwell*, *3 Denio*, 61, 66 ; *Crafts* v. *Mott*, 4 *Comstock*, 604 ; *Norton* v. *Coons*, 2 *Selden*, 33, 40) ; 6. The claim of the plaintiff, though uncertain and contingent, was provable under the act, and is barred by the discharge (*Crafts* v. *Mott*, 4 *Comstock*, 604 ; 5 *Barbour*, 305, S. C. ; *Jemison* v. *Blowers*, 5 *Barbour*, 686 ; *Morse* v. *Hovey*, 1 *Sandf.. Chy.*, 187 ; *Shelton* v. *Pease*, 10 *Missouri*, 473, 478, 479 ; *Stone* v. *Miller*, 16 *Penn. St.* 450, 457–8 ; *Butcher* v. *Foreman*, 6 *Hill*, 583 ; *Mace* v. *Wells*, 7 *Howard, U. S. R.*, 272) ; 7. The decisions in the Maine reports, relied on by the appellant, are in direct conflict with those of our courts, and follow the precedents under the bankrupt acts of England, which made no provision for the contingent claims of sureties. (*See Butcher* v. *Forman*, 6 *Hill*, 585 ; *Crafts* v. *Mott*, 5 *Barbour*, 309, 310 ; *Clark* v. *Rowling*, 3 *Comstock*, 216, 223, 224, *and authorities above cited.*) (1.) The 56th section of the act of 6 *Geo. IV*, *ch.* 16, which has been cited as equivalent to the 5th section of our bankrupt act, does not profess to provide for the case of sureties, but looking merely to the immediate relation of debtor and creditor, provides for the proof of " any debt, payable upon a contingency which shall not have happened" before the issuing of the commission; (2.) The 52d section of that act, which provides for the case of a surety, restricts him from proving his claim, unless he has made actual payment. " Any person, who, at the issuing of the commission, shall be surety, or liable for any debt of the bankrupt, or bail for the bankrupt," &c., " if he shall have paid the debt," &c., " shall be entitled," &c.; (3.) Even to these restricted provisions, the English courts have given a far more liberal construction than the courts of Maine to the comprehensive language of our own bankrupt act (*in re Willis*, 4 *Welsby*, *Hurls. & Gord.*, 530 ; *Lane* v. *Burghart*, 41 *Eng. Com. Law*, 845 ; *in re Tindal*, 8 *Bingham*, 402) ; (4.) Our bankrupt act was studiously framed with a view to more ample relief. It extended not merely to the debts, but to the " contracts

Tobias *against* Rogers.

and other engagements" of the bankrupt. Instead of being limited to " debts payable upon a contingency," it embraced all " uncertain or contingent demands," and placed the surety upon the same footing with the principal creditor, except in withholding payment until the " claims become absolute" (*see Vedder* v. *Vedder*, 1 *Denio*, 257, 261; *In re Denny, &c.*, 2 *Hill*, 220, 223; *Bouvier's Law Dictionary* " *Demand;*" 5 *Barbour*, 310, 311, *per Allen J.*; 5 *Barbour*, 691, 692, *per Sill, J.*; 10 *Missouri*, 478, 479; 16 *Penn. St.* 457–8); (5.) The same policy which led to these enactments now prevails in England, and the provisions of the recent consolidation bill, in respect to this class of claims, are assimilated to those of the American bankrupt act. (*Bankrupt Consolidation Act*, 12 *and* 13, *Vict. ch.* 106, § 178.)

GARDINER, C. J. The plaintiff and defendant were sureties in a replevin bond for Mahoney and Trull, conditioned, among other things, for the payment to the defendants in the replevin suit " of all such sums as might by them be recovered against Mahoney and Trull in that suit." The bond was executed in 1837. Rogers, the defendant in this suit, presented his petition in 1842, and obtained his discharge in 1843. The discharge operated upon "all debts, contracts and other engagements of the bankrupt, provable under the act." The 5th section of the bankrupt act provides, " that all persons having uncertain or contingent demands against such bankrupt, shall have a right to come in and prove such debts or claims, and shall have a right when their debts and claims become absolute, to have the same allowed to them." Ten years after the execution of the bond, and five after the presentation by Rogers of his petition, the defendants in the replevin suit, recovered judgment against Mahoney and Trull for over $1300, which Tobias, the plaintiff in this action was compelled to pay; and he now brings this suit against Rogers, his co-surety in the replevin bond, for contribution.

Tobias *against* Rogers.

The effect of the discharge was to exonerate Rogers from his obligation incurred to the defendants in the replevin suit, by his execution of the bond in their favor, as one of the sureties of Mahoney and Trull. His liability as a co-obligor with the plaintiff was extinguished by operation of law; and from that moment he ceased to be co-surety with him for a common liability or a common principal. Now if the right to contribution results from a general principle of equity, that sureties in *æquali jure* must bear the common burden equally, and that it will be enforced whenever they are bound for a principal debtor in relation to one and the same transaction, as determined by the supreme court in *Norton* v. *Coons* (3 *Den.*, 130), and by this court, in effect, in *Barry* v. *Ransom* (2 *Kernan*, 462), then it follows, that all claim to it ceases when that obligation is canceled, either by the act of the parties or by operation of law. The defendants in the replevin suit could have released one of the sureties with the assent of the other, leaving the latter sole guarantor of the performance of the contract of the principal. What the parties could do by agreement the law has done without it. When the sureties contracted for their principal, they knew that the national legislature could, in the case that has arisen, discharge either of them from the obligation thereby assumed, and that the right of contribution would cease with the liability to which it was antecedent. If the plaintiff is without remedy, it is by an act of the law to which he, in common with every other citizen, is presumed to have assented.

Contribution is not founded upon, although it may be modified by contract. The right to it is as complete in the case where the sureties are unknown to each other, as in any other. The law following equity will imply a promise to contribute, in order to afford a remedy. But as this is in most instances a fiction, in aid of an equitable right, it will never be tolerated where the relation upon which the equity is founded is wanting. Such is this case. The liability

Tobias *against* Rogers.

of the defendant upon the replevin bond, was discharged four years before the suit by the obligees against the plaintiff subsequent to that time, the plaintiff and defendant have never stood in *æquali jure*, in reference to the obligation of their principal. The burden, which pressed with its whole weight upon the plaintiff, was removed from the defendant by aid of the bankrupt law. When the former paid the judgment recovered upon the replevin bond, it was as sole surety for Mahoney and Trull, and not as co-surety with the defendant.

The plaintiff executed the bond at the request and for the benefit of Mahoney and Trull, and paid the debt secured by it for their use, and not for the use of the defendant as to the whole or any part of the sum advanced. (6 *M. & W.*, 167.) No assumpsit arises until the co-surety has paid more than his proportion, even by way of furnishing a ·legal remedy. (*Davies* v. *Humphreys*, 6 *M. & W.*, 153.)

I think the judgment of the supreme court should be affirmed, upon the ground that when the money was paid by the plaintiff, the relation of co-surety did not exist between him and the defendant; and consequently no action, either at law or in equity, founded on that relation, can be maintained.

DENIO, JOHNSON, CRIPPEN and MARVIN, JJ., concurred in the foregoing opinion.

DEAN, J. (Dissenting.) I propose to examine only the first ground of demurrer. This is the important question and goes to the merits of the case, viz: Whether the discharge of the defendant released him from the plaintiff's claim.

The 1st section of the general bankrupt act provides that the debtor shall, in his petition, set forth a list of his creditors, their respective places of residence, the amount due to each, &c. The 4th. section provides for a notice to

the creditors and for publication. It also declares that the discharge shall be a full and complete discharge of all debts, contracts and other engagements provable under the act. The object of compelling the applicant to set forth in his petition a list of his creditors, and then providing for the publication and personal notice was, that those interested in preventing the discharge might appear and oppose. And it would seem as though no claims should be cut off by the discharge but those held by persons who would have a right to appear and oppose the discharge. The 5th section does not, however, limit the claims to be proved to debts, but includes persons whose debts are not due, sureties, bail or other persons having uncertain and contingent demands against the bankrupt. We are bound, in construing this clause of the act, to give the language used its full and fair meaning, but not to stretch it so as to include every case which may by any possibility be brought within it, particularly when by such a construction the whole scope and intention of the act is violated.

The case of *Crafts* v. *Mott* (4 *Com.*, 604,) but reiterates the plain language of the act, when it declares that whether the discharge and certificate will operate as a discharge of a particular debt, depends upon the question whether the debt is provable under the act; and that case only decides that as the plaintiff, by the bond executed to him by the defendant, was surety for the defendant, that his claim was provable and therefore discharged. It does not hold that the uncertain and contingent claim of a co-surety before any default of the principal or payment by any of the sureties, is cut off by the discharges.

· The 52d and 56th sections of the act of 6 *Geo. IV., chap.* 6 are very similar in their provisions to the portion of the 5th section of our bankrupt act which we are now considering; and yet, it has never been held under that act that the claim of a co-surety before default, was discharged; on the contrary, the whole course of decisions holds, " that a

liability incapable of valuation at the time of the bank-
ruptcy is not provable; as where the contingency is, whether
the original debtor would not himself pay, and whether the
bankrupt would ever be called upon to pay." (*Burge on
Sureties*, 431; *Clements* v. *Langley*, 5 *B. & Ald.*, 372.) In
the case at bar there was a contingency whether a judg-
ment in the replevin suit would ever be obtained against
the principals in the bond. And in this it differs from a
bond to pay money absolutely. But if a judgment should
be obtained against the principal in the bond, there was
another contingency, whether Mahoney and Trull, the prin-
cipals in the bond, would not themselves pay the sum
recovered against them. If they failed thus to pay, there
was then this third contingency, whether either of the
sureties would pay more than his share, and thus acquire a
right against his co-surety to contribution. There was
hence no possible manner in which the plaintiff could
establish a demand against the defendant, or in which the
demand, if it may be called such, could be valued.

It will not be pretended that the plaintiff, at the time of
the proceedings in bankruptcy, was a creditor of the defend-
ant, nor was he a surety, or endorser, or bail for the de-
fendant. Did he come within the designation, "other per-
sons having uncertain or contingent demands against such
bankrupt?" Demand, here, must be understood as some
claim or obligation due from the defendant to the plaintiff,
but the amount of which is uncertain or contingent. Be-
cause in the same proviso, creditors, whose debts are not
due until a future day, are permitted to come in and prove
their claim; in this case the demand of the plaintiff against
his co-surety did not exist until payment by the plaintiff.
At the last term of this court, in the case of *Barry* v. *Ran-
som* (2 *Kernan*, 462), we held that the right of one of
two sureties to recover against his co-surety did not depend
upon the bond executed by them, but upon equitable
principles; and that the right of action grew out of the

payment, by one of the co-sureties, of more than his share of the money.    Applying these principles to this case, it will appear that the plaintiff, at the time of the proceedings in bankruptcy, had no demand of any kind against the defendant ; but that his demand originated at the time of the payment of the money on the bond by the plaintiff. I think the cases of *Holbrook* v. *Foss* (27 *Maine R.*, 441), and of *Ellis* v. *Ham* (28 *Maine R.*, 385), are authority in point.

It is not, however, in this case, necessary to say whether the obligees in the bond had such a demand as might have been proved.    It is sufficient at this time to decide the case at bar ; and in deciding this case, the · statute in question should be fairly construed, giving to the terms used their ordinary signification.    But I am unwilling, by judicial construction, to so stretch its language as to make it a universal expunger to wipe out all claims, whether they existed at the time of the proceedings in bankruptcy or originated afterwards.

I am of opinion that the judgment of the supreme court should be reversed.

Judgment affirmed.