(141 App. Div. 170.)

### HARD v. MINGLE.

(Supreme Court, Appellate Division, First Department.    December 2, 1910.)

EXECUTORS AND ADMINISTRATORS (§ 437*)—RIGHT OF ACTION—CO-GUARANTOR—CONTRIBUTION.

One of three joint and several guarantors who has paid the full amount due under the guaranty may recover one-third of such amount as contribution against the estate of a co-guarantor, though the creditor could not then have enforced the claim against such estate by reason of the running of the short statute of limitations (Code Civ. Proc. § 1822), providing that where an executor rejects a claim, unless a written consent be filed by the parties that the claim may be determined by the surrogate upon the judicial settlement of the executor's account, claimant must commence an action to recover thereon against the executor within six months after the claim is rejected.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1729–1764; Dec. Dig. § 437.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, New York County.

Action by George M. Hard against Rosa Mingle, as executrix of Sampson Q. Mingle, deceased. From a judgment for defendant, plaintiff appeals. Reversed, and judgment rendered for plaintiff.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, McLAUGHLIN, and DOWLING, JJ.

Steele, Otis & Hall (Harold Otis, of counsel), for appellant.

Bowers & Sands (W. H. Van Benschoten, of counsel), for respondent.

CLARKE, J. The plaintiff, Sampson Q. Mingle, defendant's testator, and one Thompson, on July 20, 1899, executed and delivered to the Chatham National Bank an instrument of joint and several guaranty of payment, as follows:

"New York, July 20, 1899.

"For value received and for the purpose of giving the Realty Corporation of North America credit at the Chatham National Bank of New York, we hereby jointly and severally guarantee the payment at maturity of all checks, drafts and promissory notes upon which said Realty Corporation of North America is now or hereafter shall be liable, to said bank, as maker, indorser, drawer or acceptor, to an amount not exceeding $15,000, hereby waiving demand and notice of nonpayment thereof, this to be a continuing guaranty."

On July, 13, 1903, the Realty Corporation executed and delivered its three months' promissory note for $15,000 to one Gilbert, and Gilbert indorsed and delivered the note for value before maturity to the Chatham National Bank, which received it upon the faith of the guaranty. The Realty Corporation never made any payment on the note, having become insolvent.

On September 15, 1903, and before said note became due, Mingle died, leaving a last will and testament which was duly probated on October 7, 1903, whereby he appointed his widow, the defendant, sole executrix. Pursuant to an order of the Surrogate's Court dated October 10, 1903, the defendant duly published a notice for all claims against the estate of her testator to be presented to her on or before May 1, 1904.

On April 28, 1904, the Chatham National Bank presented in writing to the defendant a claim against the estate of her testator for the principal and accrued interest on the said note. On the 3d of November, 1904, defendant in writing disputed and rejected the said claim. No written consent was filed by the defendant and the Chatham National Bank with the surrogate that said claim of the bank might be heard and determined by said surrogate upon the judicial settlement of the accounts of the defendant, as executrix.

The bank, on the 11th of May, 1905, commenced an action against the defendant on said claim, which, however, was some eight days after the six months' period prescribed by section 1822 of the Code of Civil Procedure:

"Where an executor or administrator disputes or rejects a claim against the estate of a decedent, exhibited to him, * * * unless a written consent shall be filed by the respective parties with the surrogate that said claim may be heard and determined by him upon the judicial settlement of the accounts of said executor or administrator, * * * the claimant must

commence an action for the recovery thereof against the executor or administrator within six months after the dispute or rejection,   *   *   *   in default whereof he, and all the persons claiming under him are forever barred from maintaining such an action thereupon, and from every other remedy to enforce payment thereof out of the decedent's property."

The answer of the defendant in said action by the bank contained the defense that the short statute of limitations had run, and subsequently an order was entered discontinuing said action.

On February 14, 1906, a written notice was personally served upon the plaintiff stating that the bank had presented its claim in writing, that such claim had been rejected, that the bank had not commenced suit within six months thereafter, and that therefore the claim of the bank was barred and extinguished as against the estate of Sampson Q. Mingle, and that plaintiff would at his peril and on his own liability and responsibility, and without any right for contribution from the estate, pay any sum to the bank on said claim.

On October 20, 1906, plaintiff paid to the Chatham National Bank, upon its demand, on said note $15,000 principal, and $1,811.67 interest. This action was commenced on or about March 13, 1907, to recover under the doctrine of contribution, $5,603.89, one-third of the amount so paid on said note by the plaintiff under said joint and several guaranty.

The facts were stipulated or conceded upon the trial. The learned Special Term held as conclusions of law that after May 5, 1905, the claim of the Chatham National Bank against the estate of Sampson Q. Mingle, deceased, on the said guaranty was barred and extinguished, and the said estate was absolutely discharged from all liability to the bank thereon; that the plaintiff was not legally liable to pay to the bank more than two-thirds of the amount due on the loan to the Realty Corporation on account of said guaranty; and that the plaintiff is not entitled to recover in this action. And judgment was therefore directed for the defendant on the merits. From said judgment plaintiff appeals.

The question presented is: Has one of three joint and several guarantors of payment, who has paid the full amount due under the guaranty, a right to recover contribution of one-third of the amount paid against the estate of one of his co-guarantors, as to which no enforceable liability by the principal continues to exist by reason of the running of the short statute of limitations provided by section 1822 of the Code of Civil Procedure?

It is conceded that there are no cases in this state precisely decisive of the point in issue. The respondent relies upon dicta which taken out of their context and divorced from the facts under consideration go far to support her contention. In Tobias v. Rogers, 13 N. Y. 59, Tobias & Rogers, in 1837, executed and delivered as sureties a joint and several bond in an action of replevin. Rogers in 1843 was discharged in bankruptcy under the provisions of the bankruptcy act passed August 19, 1841. In 1847 the defendants in the replevin suit recovered judgment, and they brought suit on the bond against Tobias and recovered judgment in 1849. In 1850 Tobias paid this judgment against him and brought said action for con-

tribution against his cosurety, Rogers, who had been discharged in bankruptcy seven years theretofore. The court held that under the bankruptcy act the effect of the discharge was to exonerate Rogers from his obligation under the bond given in the replevin suit.

"His liability, as a co-obligor with the plaintiff, was extinguished by operation of law; and from that moment he ceased to be cosurety with him for a common liability or a common principal. Now, if the right to contribution results from a general principal of equity that sureties in æquali jure must bear the common burden equally, and that it will be enforced whenever they are bound for a principal debtor in relation to one and the same transaction, as determined by the Supreme Court in Norton v. Coons, 3 Denio, 130, and by this court, in effect, in Barry v. Ransom, 12 N. Y. 462, then it follows that all claim to it ceases when that obligation is canceled, either by the act of the parties or by operation of law. * * * Contribution is not founded upon, although it may be modified by, contract. The right to it is as complete in the case where the sureties are unknown to each other, as in any other. The law following equity will imply a promise to contribute, in order to afford a remedy; but as this is in most instances a fiction, in aid of an equitable right, it will never be tolerated where the relation upon which the equity is founded is wanting. Such is this case. The liability of the defendant upon the replevin bond was discharged four years before the suit by the obligees against the plaintiff. Subsequent to that time, the plaintiff and defendant have never stood in æquali jure, in reference to the obligation of their principal. The burden, which pressed with its whole weight upon the plaintiff, was removed from the defendant by aid of the bankrupt law. When the former paid the judgment recovered upon the replevin bond, it was as sole surety for Mahoney and Trull, and not as cosurety with the defendant."

There the court, having determined that the discharge under the bankruptcy act had the effect of releasing uncertain and contingent demands, said:

"When the sureties contracted for their principal, they knew that the national Legislature could, in the case that has arisen, discharge either of them from the obligation thereby assumed, and that the right of contribution would cease with the liability to which it was antecedent. If the plaintiff is without remedy, it is by an act of the law to which he, in common with every other citizen, is presumed to have assented."

It will be seen that what was decided, therefore, was that the bankruptcy act, which was passed after the original bond had been executed, had the effect, when the discharge provided for thereunder had been granted, of wiping out all the debts, fixed, uncertain, or contingent, of the bankrupt.

Aspinwall v. Sacchi, 57 N. Y. 331, was an action brought against stockholders for contribution by a stockholder against whom judgment had been obtained for liabilities against his company. The court, after citing numerous cases, said:

"It will thus be seen that it is no answer to a claim for contribution that it cannot be based upon any contract, that the parties are severally and not jointly bound, that they are bound by separate instruments, that they are liable for the same debt or obligation in different amounts, that it can make no difference whether they be principal debtors or mere sureties, and that the doctrine of contribution rests upon the broad principle of justice, that when one has discharged a debt or obligation, which others were equally bound with him to discharge, and thus removed a common burden, the others who have received a benefit ought, in conscience, to refund to him a ratable proportion."

In Johnson v. Harvey, 84 N. Y. 363, 38 Am. Rep. 515, a surety who had paid a judgment sued the administrator of a cosurety, who had died before a trial of the litigation in which the bond had been given, for contribution to the amount of one-half of the amount paid. The court said:

"The sole question presented and argued is whether such contribution can be enforced. The question is hardly an open one in this state. It was held in Bradley v. Burwell, 3 Denio, 61, that the death of one of two or more sureties did not relieve his estate from the liability to contribute, and the decision was put upon the ground that the law implies a contract between cosureties to contribute ratably toward discharging any liability which they may incur in behalf of their principal, such contract originating at the time they executed the original undertaking, and that in the case of the death of either this obligation devolves upon his legal representatives, and is like any other contract made by one in his lifetime to pay money at a future time, absolutely or contingently, who dies before any breach of the contract. * * * In Norton v. Coons, 3 Denio, 130, * * * it was again held that, while contribution between sureties was founded on a general principle of equity and justice, yet what had been an equitable had become a legal right, and that in such case the law will, for all the purposes of a remedy, imply a promise of payment. In the case of Tobias v. Rogers, 13 N. Y. 66, the surety was held not liable to contribute because relieved in his lifetime from all liability, either as obligor or cosurety, by a discharge in bankruptcy. It was there said that the defendants in the replevin suit could have released one of the sureties with the assent of the other, and that to the act of the Legislature, providing for a discharge in bankruptcy, such other surety, in common with every other citizen, is presumed to have assented. The reasoning has no application to the case of a deceased surety. And, while the court added that contribution was not founded upon contract, it was further said that the law following equity will imply a promise to contribute in order to afford a remedy. The justice of such a rule is apparent. Originating in equity, it has been grafted upon the law with the aid of an implied promise to secure the legal remedy. We see no reason to reverse it, but every consideration of equity and justice leads us rather to maintain and enforce it."

We have examined the other cases cited, but none of them are upon the precise point, and but restate the foregoing general propositions and are all really based upon the language in Tobias v. Rogers, supra, which, as we have pointed out, was really a decision as to the effect of the United States bankruptcy act.

On the other hand, there are a number of decisions in the courts of other states, following the common law, upon the precise point here at issue and holding that the right to contribution survives the running of the statute of limitations as against the cosurety upon the original debt.

In Wood v. Leland, 1 Metc. (Mass.) 387, the plaintiff sued the heirs and devisees of a cosurety for contribution upon an amount paid by him after the short statute of limitations of Massachusetts of one year had run. Chief Justice Shaw said:

"Now, the defendants contend that, as they could not be held responsible to the obligee for such breach of the bond, after one year, so they would not be held liable for a contribution to a surety after that time. But the court are of opinion that the statute of limitations cannot be so applied. It may well be admitted that the statute of limitations would be a good bar to an action by the obligee against the heirs and legatees; but the right of action by the surety for contribution does not accrue at the breach of the bond, but upon his payment of the money, pursuant to that breach. The suit

against him is not barred in one year. *  *  * But his right of action for contribution arises when he does pay, and not before. Notwithstanding a breach, the debt may be paid by the principal, or relinquished, or compromised, and the surety never compelled to pay. If so, he never has a cause of action against the cosurety or his representatives. The right of action grows out of the original implied agreement, arising out of there being cosureties, that if one shall be compelled to pay the whole or a disproportionate part of the debt, for which both thus collaterally and provisionally stipulate to be liable, the other will pay such a sum as will make the common burden equal; and, in case of the death of either, this obligation devolves upon his legal representatives. This suit, being brought within one year from the time of the payment of the money by the plaintiff, is not, we think, barred by the statute of limitations."

In Crosby v. Wyatt, 23 Me. 156, the court said:

"The obligation of one surety to repay to another, who has paid the whole debt, a moiety of it, does not arise solely out of the consideration that he has thereby been relieved of a burden, but also from the consideration that he engaged to indemnify him against loss arising from his own neglect to pay. *  *  * It is no sufficient defense therefore for the defendant to show that he could not have been compelled by law to pay any part of that note, when it was paid by the plaintiff; for that would not show that he had not broken his implied contract with the plaintiff to save him from loss by his being compelled to pay that half of the note which he ought himself to have paid. The plaintiff's right of action for the breach of that engagement first accrued upon payment of the whole debt to the bank."

In Sibley v. McAllaster, 8 N. H. 389, an action for contribution, the court said:

"We are therefore of opinion that, although no action could have been maintained against the executor upon the note at the time the plaintiff paid it, still the plaintiff remained liable upon the note, and that he is entitled to recover in this case whatever he paid to discharge himself from that liability."

And in Peaslee v. Breed, 10 N. H. 489, 34 Am. Dec. 178, the court said:

"The *  *  * case raises the question whether, when one of two makers of a note is discharged by the statute of limitations, and the other remains liable, and pays, the latter is entitled to recover of the former a contribution."

And held that he could.

To the same effect, Boardman v. Paige, 11 N. H. 431, where the court said:

"The undertaking of the co-promisor, then, is a liability, or undertaking, which in its very nature continues so long as the original liability continues on the part of any one, for the payment of the debt; for, so long as the liability of any one continues, he may be compelled to pay, and when he pays he is entitled to recover contribution. We would further remark that we are now considering the rule of law resting upon an equitable foundation. Contribution, indeed, is said to be bottomed on a fixed principle of justice, and not upon contract. The rule of law, then, would seem to be that, when one of two or more co-promisors, without assuming any new ground of liability, still continues liable upon the original contract of the promisee, and is lawfully compelled, by virtue of such contract, to pay the debt, or discharge the original liability of all the co-promisors to the promisee, in such case the equitable liability of the other co-promisors, for contribution of their fair proportion, will still remain, notwithstanding any contract of the promisee for the relief of such other co-promisors, and notwithstanding they may be discharged by the operation of the statute of limitations from that liability to the promisee."

To the same effect, Aldrich v. Aldrich, 56 Vt. 324, 48 Am. Rep. 791.

In Marshall v. Hudson, 17 Tenn. 57, a note had been made by a principal debtor with two sureties. The principal debtor died. Administration was granted to his widow. No claim was exhibited to her within two years after qualification. Thereafter suit was instituted against her, and she pleaded the statute of limitations, upon which plea judgment was rendered in her favor. Thereafter the bank instituted a suit against one of the sureties who relied upon the statute of limitations of two years in favor of the estate of the deceased persons, and the judgment in favor of the administratrix as discharging the estate of the principal, and that as surety he was discharged, but judgment was rendered against him, and he paid the full amount thereon and brought suit against the administratrix of the principal. Notwithstanding that judgment had gone in her favor when sued as principal upon the main debt, judgment went against her in this case; the court saying:

"It has been settled that the cause of action, although growing out of the relation of principal and surety created by the original contract, commences, in point of time, with, and is founded upon, the payment of the debt by the surety, or, at the earliest, by a statute of our own, upon the rendition of a judgment against him. It is then that he becomes a creditor of his principal."

In Reeves v. Pulliam, 68 Tenn. 154, the defendant, who was the executor of a cosurety, relied upon the statute of limitations of two years and six months. The court, after reviewing the Tennessee cases in regard to contribution, said:

"In these cases the defendants were discharged from the original debts. But the payment of their cosurety gave a cause of action notwithstanding. Certainly the right to plead the statute of limitations, which we can see would be a good defense to the original obligation, can contribute no higher or better defense against the action of the cosurety than the actual discharge from such original debt. The surety's right who has paid the debt of his cosurety to recover, therefore, does not depend upon the payment of the debt which they were jointly bound to pay at the time the payment was made, but upon the fact of their being cosureties in the obligation which one has been obliged to pay. And when he has paid it, and not before, he has a cause of action."

Cawthorne v. Weisinger, 6 Ala. 714:

"But although the payee may have lost his right to proceed against the estate of the deceased, by his omission to present the note to the executor within 18 months after the grant of letters testamentary, if the whole should be recovered against the witness as maker, he would have a right to proceed against the estate of the deceased for contribution; as his right to contribution would arise from the payment of the money, and would not be affected by the omission of the payee to present it in time. This is the principle of the case of McBroom v. Governor, 6 Port. [Ala.] 32."

In Camp v. Bostwick, 20 Ohio St. 337, 5 Am. Rep. 669, the question raised was the plea of the running of the statute of limitations against the principal debtor as a bar to an action for contribution.

"But the doctrine of contribution has its origin in the relation of cosureties or other joint promisors in the same degree of obligation. It is not founded upon the contract of suretyship. * * * It is an equity which springs up

at the time the relation of cosureties is entered into, and ripens into a cause of action when one surety pays more than his proportion of the debt. From this relation the common law implies a promise to contribute in case of unequal payments by cosureties. But equity resorts to no such fiction. It equalizes burdens and recognizes and enforces the reasonable expectations of cosureties because it is just and right in good morals, and not because of any supposed promise between them. This equity, having once arisen between cosureties, this reasonable expectation that each will bear his share of the burden, is, as it were a vested right in each, and remains for his protection until he is released from all his liability in excess of his ratable share of the burden. Neither the creditor, the principal, the statute of limitations, nor the death of a party can take it away."

In Koelsch v. Mixer, Administrator, 52 Ohio St. 207, 39 N. E. 417, referring to Camp v. Bostwick, supra, the court said:

"And so, it was there held that though the estate was, by the statute of limitations, released from its direct liability to the creditor, it nevertheless remained liable to contribute to a cosurety who had paid more than his moiety of the debt."

We think that the reasoning of these cases is sound. The plaintiff was under a legal compulsion to pay the full amount of the principal debt; the obligation which he had signed being joint and several. At the time of the signing of that obligation, an equity sprang up that each of the cosureties would sustain a one-third share of the common burden which they undertook to bear. Such equity ripened when one of them was compelled to pay and did pay more than one-third of the principal obligation. The debt then accrued, and no short statute of limitations available to the personal representatives and the obligee can be availed of to destroy an equitable right of contribution arising out of the relation of cosuretyship.

We therefore think that the judgment appealed from should be reversed with costs, and, as there is no dispute about the facts, that judgment should be entered upon the findings of fact in favor of the appellant, with costs and disbursements. All concur.